**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

COMMERCE BANK,                                    )
                                                  )
                        Appellant,                )
                                                  )
v.                                                )        Case No. 13-CV-252-GKF-TLW
                                                  )
PATRICK J. MALLOY, III, as Trustee                )        Adversary No. 12-01051-M
of the Estate of George David Gordon, Jr.,        )
                                                  )
                        Appellee.                 )

## OPINION AND ORDER

Before the court is the Motion to Dismiss Appeal [Dkt. #15] filed by appellee, Patrick J.

Malloy, III ("Malloy"), the designated Bankruptcy Trustee in the matter of *In re David Gordon*,

Case No. 11-10045, pending in the United States Bankruptcy Court for the Northern District of

Oklahoma.  Malloy seeks dismissal of the appeal by Commerce Bank ("Commerce") of the

decision in Adversary Proceeding No. 12-01051 in the Gordon bankruptcy case.

### I. Procedural Background

The convoluted history of this dispute encompasses a federal criminal securities fraud

case, a Chapter 7 bankruptcy, an adversary proceeding in the bankruptcy case, and a civil lawsuit

for alleged aiding and abetting securities fraud.

On May 3, 2010, David Gordon ("Gordon") was convicted of 23 counts, including wire

fraud; securities fraud; money laundering; conspiracy to commit securities fraud, wire fraud and

money laundering; making a false statement to the Securities and Exchange Commission; and

obstruction of justice.  *United States v. George David Gordon, et al.*, Case No. 4:09-CR-13-001-

JHP.[1]  He is currently serving an 18-year sentence.  As part of Gordon's conviction, the government obtained a joint and several criminal forfeiture money judgment against him in the amount of $43,927,809.95 as traceable stock sale proceeds.  The judgment was part of the government's effort to recoup losses suffered by victims of Gordon's stock schemes.

On January 7, 2011, Gordon filed a voluntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of Oklahoma. [11-10045-M, Dkt. #1].  The United States filed a claim against Gordon for $43,609,877.44.  [Record, Dkt. # 5-6 at 158].[2] Commerce also filed a claim against Gordon for $470,200, based on a guaranty of indebtedness executed by Gordon.  [*Id.*].

Malloy, the court-appointed Trustee, entered into negotiations with the government for assignment of the claims of investors defrauded by Gordon.  Malloy also communicated with Commerce about settlement of potential claims against the bank.

On May 25, 2012, Malloy filed an Amended Trustee's Notice and Motion to Settle Disputed Matter ("Motion to Settle") pursuant to Federal Rule of Bankruptcy Procedure 9019. [Record, Dkt. #5-3 at pp. 3-97].  In that motion, Malloy sought approval of a compromise settlement with the United States, which included a proposed Coordination Agreement ("CA").  The CA provided for assignments of the claims of  "approximately 17,000 possible victims" of the pump-and-dump scheme against third parties (including Commerce) to the Gordon bankruptcy estate.  [Record, Dkt. #5-2 at 61-62; Dkt. #5-3 at 1-2].  Commerce objected to the motion, asserting, *inter alia*, that the proposed assignments violate Oklahoma law and that the Trustee, with the assistance of the United States, was improperly soliciting the claims for

---

[1] Gordon was accused of orchestrating several "pump-and-dump" stock schemes that artificially inflated stock prices of various companies.  Bank South, a small Oklahoma bank, and Bruce C. Humphrey, a loan officer at the bank, are alleged to have aided and abetted Gordon in the scheme by laundering the proceeds from sales of the artificially inflated stock.  Bank South was acquired by Commerce Bank, N.A. effective April 1, 2007.
[2] Unless otherwise noted, all references pertain to the docket in this matter.

litigation through the use of the CA and impermissibly favoring the investors over the other creditors of the bankruptcy estate. [Record, Dkt. #5-3 at 87-99].  Malloy, in his response to Commerce's objection, asserted that bankruptcy law determines whether or not the assigned claims become the property of the estate and, alternatively, that the assignment of the claims is allowed under Oklahoma case law.  [Record, Dkt. #5-5 at 21-22].  Commerce in its reply, argued that the CA proposed by the Trustee "appears to be a means by which the United States' late-filing of its claim might be excused and a means by which the Trustee's alleged standing to pursue non-bankruptcy class action claims against third parties, including Commerce Bank, may be bolstered, and used in an attempt to avoid statutes of limitation and class action prerequisites" and "[n]either the means used nor the result sought by the United States and the Trustee have statutory authorization." [*Id.* at 97-98].  Commerce stated:  "If the Court approves the Motion to Settle over Commerce Bank's objection, it should only be approved *subject to* the following:  The order is not a determination that (i) the Investor claims being assigned to the Trustee are valid or (ii) the United States has any claim against third parties that is valid."  [*Id.* at 98].

Commerce filed the Adversary Proceeding on July 5, 2012, seeking declaratory judgment that the investors' claims which the trustee had threatened to assert against Commerce were not the property of the debtor or the debtor's estate and could not be brought by the Trustee. [Record, Dkt. #5-1, pp. 4-5].

On July 26, 2012, the Bankrutpcy Court held a hearing on Malloy's Motion to Settle. [TR, Record, Dkt. #5-5 at 149-174].  At the hearing, counsel for Commerce stated his client was concerned "that what the Trustee is or was trying to accomplish through this Coordination Agreement is essentially a bootstrap in its simplest terms," and that he hoped "the end result that we get is whatever order [the court] approves or denies, this motion to approve the settlement

compromise clearly does not rule on ultimate merits of any defense that—any defense or any issue that might be out there in those other claims." [*Id.* at 162-163]. Additionally, counsel advised the court his client wanted to conduct discovery "as to what claims the United States has against Commerce Bank that it is assigning." [*Id.* at 163]. Finally, he stated: "The Trustee says today that in the course of asking to approve a dispute between the U.S. and the Trustee, I will no longer be able to assert that an assignment between a nonparty to this bankruptcy and the post-petition estate was invalid," and "[t]hat's completely outside the scope of 9019. That should not be an issue in any way, shape, or form. And that's exactly why we were worried. It appears that's exactly what they are trying to do. So we absolutely urge the court not to rule on that issue. We believe these assignments are invalid. We've briefed it. We put the issue before the Court so that the Court understands the nature of the issue. And—but we don't believe that's proper for a Rule 9019 motion." [*Id.* at 169].

On August 8, 2012, the Bankruptcy Court held a telephonic hearing on the Amended Notice and Motion to Settle. [Record, 5-6 at 34-48]. During the hearing, the court noted that Malloy had argued "that as a linchpin of the agreement any order approving the agreement must also approve and assignments and render them valid as a matter of law." [*Id.* at 38]. The court stated:

> With respect to the requirement that the assignments' validity be approved with the agreement: Why? Isn't the validity of the assignments a matter to be dealt with in any litigation of an assigned cause of action? Moreover, if this is necessary, can I issue an order unconditionally and finally approving these assignments and declaring their validity as part of a compromise under the motion practice employed under the Federal rules of Bankruptcy Procedure?
>
> Isn't what the trustee [is] really seeking more in the nature of a declaratory judgment as to the validity of the assignments, which we all know requires an adversary proceeding? And, moreover, isn't this issue directly raised by Commerce Bank in the adversary proceeding currently pending as a declaratory judgment action, namely, adversary proceeding 12-1051[?]

[*Id.* at 38-39].

On August 13, 2012, Malloy moved to dismiss the Adversary Proceeding. [*Id.*, Dkt. #5-1, pp. 8-23]. Among other arguments, Malloy asserted that the Adversary Proceeding would be mooted by the court's consideration of the Motion to Settle because "[i]f the Court determines that the assignments are valid consideration for the Trustee's settlement with the government, it impliedly will have found that the assignments themselves are valid." [*Id.* at 22].

On August 29, 2012, Commerce filed its Brief in Opposition to Malloy's Motion to Dismiss the Adversary Proceeding. [*Id.*, Dkt. #5-1 at 24-29]. In that brief, Commerce argued that "the Court should determine the 'validity' of the assignments in the context of the Adversary Proceeding—either alone or consolidated with the Rule 9019 disputed matter pending in the Chapter 7 case—after providing the parties a full opportunity to take discovery on the multiple issues that go into the validity of an assignment, file dispositive motions to narrow the issues for trial and hearing the evidence at trial." [*Id*. at 27].

 [Record, Dkt. #5-6 at 2-3].

On September 4, 2012, Malloy filed his Supplemental Brief in Support of Coordination Agreement and Proposed Assignments. [Record, Dkt. #5-6 at 49-54]. In the brief, Malloy argued Federal Rule of Bankruptcy Procedure  9014 authorized, and perhaps even *required*, the Bankruptcy Court to decide the issue of the validity of the assignments in the Rule 9019 hearing. [*Id.*].

On September 5, 2012, Commerce filed a Supplemental Brief in Opposition to the Motion to Settle, in which it reiterated its position that the validity of the assignments should not be decided in summary fashion in the Rule 9019 hearing, but rather in the Adversary Proceeding

"with its requirements for full discovery, motion practice, and trial of evidentiary issues." [Record, Dkt. #5-6 at 55-62].

In its Response to Trustee's Motion for Pre-Hearing Conference, filed October 18, 2012, Commerce again stated its opposition to the Trustee's request for a determination, in the Rule 9019 hearing, that the court find the assignments "valid." [Record, Dkt. #5-6 at 64-70]. It also suggested if the Bankruptcy Court approved the CA, it include the following language in its order:

> Nothing in this Order shall be deemed to be a ruling on the validity of any assigned claim or the validity of any proposed assignment. Nothing in this Order shall preclude any party from asserting any defense to or argument against any claim which may be asserted against such party by the Trustee, and nothing in this Order shall be deemed to be a ruling upon the validity of any such defense or argument.

[*Id.* at 65].

On October 25, 2012, the Bankruptcy Court conducted an evidentiary hearing on the Motion to Settle.  [Record, Dkt. #5-6 at 73-156].  During the hearing, the court asked counsel for Commerce whether he would be happy if the court used the language suggested in Commerce's October 18, 2012, brief.  [*Id.*, at 76-77].  Counsel responded, "We would be happy with that language.  If you're telling us are we happy with anything else you might do with that order, that's hard to say not knowing exactly what else you would do with that order." [*Id.* at 77].

On January 4, 2013, while Malloy's motion to dismiss the Adversary Proceeding was still pending, the Bankruptcy Court entered a Memorandum Opinion approving a settlement in the form of a Coordination Agreement ("CA") between Malloy and the United States.  [*Id.*, #5-6, pp. 157-178].  In the Memorandum Order, the court found that the record before it was insufficient to determine whether Oklahoma law would prohibit assignment of the claims.  [*Id.* at 174].  Further, it stated:

Even if the record were complete regarding the claims that Malloy intends to bring against Commerce (or any other party for that matter), this Court would leave the issue to the court where the matter will be tried.  The time for the issue of Malloy's standing to be determined is when he files his complaint, and the place to determine the issue is in the court where litigation is commenced.  This decision is consistent with the authority cited by Malloy.  In each of those cases, standing was determined within the context of litigation of the assigned claims, and not by another court.  Once Malloy files his cause of action, the court where the action is filed should have a full understanding of the nature of the claims asserted.  That court will be in the best position to determine whether the claims asserted are assignable.

* * *

Malloy is authorized to enter into the CA.  The Court makes no finding regarding the validity of the assignments authorized under the CA, leaving that issue to the court or courts ultimately responsible for any such litigation.

[*Id.* at 174].[3]

The same day, Malloy filed suit against Commerce and Humphrey in Tulsa County District Court.  [Dkt. # 5-1 at 22-48, Petition].  Defendants removed the case to federal court on January 30, 2013.  [Case No. 4:13-CV-59-JHP-FHM, Dkt. #2].  On February 6, 2013, they filed a Motion to Dismiss [*Id.*, Dkt. #18].  Malloy filed a Motion to Remand on February 12, 2013. [*Id.*, Dkt. #18].

On March 27, 2013, the Bankruptcy Court entered a minute order granting the Trustee's motion to dismiss the Adversary Proceeding.  [Record, Dkt. #5-1, p. 3].   In its order, the court stated:

Commerce Bank seeks a declaratory judgment regarding the standing of Patrick J. Malloy III to bring certain causes of action against Commerce Bank.  There is no need for this Court to issue a declaratory judgment, as each of those causes of action is presently pending before the United States District Court for the Northern District of Oklahoma in Case No. 12-CV-0059-JHP-FHM.   As this Court stated in its January 4, 2013, Memorandum Opinion regarding approval of a compromise between Patrick J. Malloy III and the United States of America, [t]he

---

[3] The deadline for Commerce to appeal the ruling of the Bankruptcy Court on the Motion to Settle was January 18, 2013, 14 days after the entry of the order.  28 U.S.C. § 158(a)(1), (2); Fed.R.Bankr.P. 8002).  Commerce did not appeal the ruling.

time for the issue of Malloys standing to be determined is when he files his complaint, and the place to determine the issue is in the court where litigation is commenced . . . There is no reason for this Court to address issues of standing with respect to litigation commenced in another court.  To the extent Commerce Bank has suggested that it is beneficial to allow this adversary proceeding to remain in place in case Commerce Bank wishes to have this Court visit certain issues regarding Malloys standing, the Court rejects the argument.  The dispute between Commerce Bank and Malloy should be resolved in a single forum, and not on a piecemeal basis.  The best course of action is for this adversary proceeding to be dismissed without prejudice to the ability of Commerce Bank to raise issues of standing in the court where the action brought by Malloy is pending.  Accordingly, IT IS HEREBY ORDERED that this adversary proceeding be, and the same hereby is, dismissed without prejudice.

[*Id.*].  Commerce appealed the dismissal of the Adversary Proceeding on April 29, 2013.  [Dkt. #1].

On May 6, 2013, United States District Judge James H. Payne granted Malloy's Motion to Remand Case No. 13-CV-59 to Tulsa County District Court. [Case No. 13-CV-59, Dkt. #58].

## II. Analysis

Malloy argues the appeal should be dismissed on the following grounds: (1) the Bankruptcy Court's January 4, 2013 order granting the Motion to Settle rendered Commerce's adversary action moot; and (2) Commerce is judicially estopped from arguing in this appeal that Malloy does not have standing to assert claims against it.

### A. Mootness

"A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."  *Knox v. SEIU Local 100*, ___ U.S. ___, 132 S.Ct. 2277 (2012).  Malloy asserts that "[w]hen the Bankruptcy Court's ruling of January 4, 2013, became final and non-appealable 14 days later on January 18, the issues then pending in the Adversary were rendered moot" and "[b]y virtue of the earlier ruling, the Bankruptcy Court had already

decided not to rule on the issue presented by the Adversary of whether Malloy has standing." [Dkt. #15 at 5].

The court rejects Malloy's argument.  Although, as a practical matter, the Bankruptcy Court's ruling on the Motion to Settle made it unlikely that Commerce would prevail in the Adversary Proceeding, it was not "impossible for a court to grant any effectual relief whatever" to Commerce until the Bankruptcy Court granted the trustee's motion to dismiss the adversary proceeding on March 27, 2013. *See Knox*, 123 S.Ct. at 2287.  Before that time, there was a chance—however slight—that Commerce could persuade the Bankruptcy Court to change its mind about whether it should rule on the assignability/standing issue.

### B. Judicial Estoppel

The Tenth Circuit has described the doctrine of judicial estoppel as follows:

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*Johnson v. Lindon City Corp.*, 405 F.3d 1065 (10th Cir. 2005) (quotation and citation omitted). The court in *Johnson* noted that while judicial estoppel is "probably not reducible to any general formulation of principle," the following factors are relevant:

> First, a party's later position must be clearly inconsistent with its earlier position. Moreover, the position to be estopped must generally be one of fact rather than of law or legal theory.  Second, whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled.  The requirement that a previous court has accepted the prior inconsistent factual position ensures that judicial estoppel is applied to the narrowest of circumstances.  Third, whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* (quotations and citations omitted).  Commerce's conduct does not meet the requirements to invoke judicial estoppel.  Commerce's position was one of law rather than fact, and it consistently  urged both that the claims were not assignable as a matter of law, and that assignability could not be resolved in a Rule 9019 hearing but instead, must be addressed in the adversary proceeding.  Even in its brief suggesting language for any order approving the Motion to Settle, Commerce did not abandon its argument that the issue of assignability should be resolved in the Adversary Proceeding rather than the Rule 9019 proceeding.

### III. Conclusion

For the reasons set forth above, the Trustee's Motion to Dismiss Appeal [Dkt. #15] is denied.

ENTERED this 30th day of July, 2013.


GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT