IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| COMMERCE BANK, N.A., )<br>a Missouri bank & trust company, )<br>  )<br>Appellant, )<br>  )<br>v. )<br>  )<br>PATRICK J. MALLOY, III, as Trustee )<br>of the Estate of George David Gordon, Jr., )<br>  )<br>Appellee. ) | Case No. 13-CV-252-GKF-PJC<br><br>Adversary Case No. 12-01051-M |

## OPINION AND ORDER

Before the court is the appeal by Commerce Bank, N.A. ("Commerce Bank") of the Bankruptcy Court's order dismissing appellant's Adversary Complaint for Declaratory Judgment. Pursuant to General Order 05-9, the appeal was referred to Magistrate Judge Paul J. Cleary. On February 13, 2014, Magistrate Judge Cleary entered a Report and Recommendation in which he (1) found the Bankruptcy Court did not abuse its discretion in declining to exercise federal declaratory judgment jurisdiction and dismissing the adversary action; and (2) recommended the Bankruptcy Court's decision in dismissing the adversary action be affirmed. [Dkt. #37 at 7].

Commerce Bank filed Objections to the Report and Recommendation. [Dkt. #40]. Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3), the court conducts a *de novo* review of any part of the Magistrate Judge's disposition that has been properly objected to.

Commerce Bank raises two objections to the Report and Recommendation. First, it asserts the Magistrate Judge should have considered the merits of the claims it sought to present in the adversary proceeding, because a consideration of the merits would have demonstrated the Bankruptcy Court's decision was arbitrary and capricious. Second, it contends the Magistrate Judge erroneously concluded the Bankruptcy Court, in dismissing the adversary action, implicitly addressed factors set forth in *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994).

## I. Background/Procedural History

The procedural history of this matter is set forth in detail in the court's Opinion and Order of July 30, 2013 denying the Trustee's Motion to Dismiss. [Dkt. #27]. To summarize, on May 3, 2010, David Gordon ("Gordon") was convicted in this court of 23 counts, including wire fraud, securities fraud, conspiracy, making a false statement to the Securities and Exchange Commission and obstruction of justice, in connection with several "pump and dump" stock schemes. *See United States v. George David Gordon, et al.*, Case No. 4:09-CR-13-1-JHP. He is currently serving an 18-year sentence. The government obtained a joint and several criminal forfeiture money judgment for $43,927,809.95 against him as part of an effort to recoup losses suffered by victims of Gordon's stock scheme.

On January 7, 2011, Gordon filed a voluntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of Oklahoma. [11-10045-M, Dkt. #1]. The United States filed a claim against Gordon for $43,609,877.44 [Dkt. #5-6 at 158]. Commerce Bank also filed a claim against Gordon for $470,200 based on a guaranty of indebtedness Gordon executed. Patrick J. Malloy, III ("Malloy"), the court-appointed Trustee of Gordon's bankruptcy estate, entered into negotiations with the government for assignment of

defrauded investors' claims against Gordon. Malloy also communicated with Commerce Bank about settlement of potential claims against the bank.

On May 25, 2012, Malloy filed an Amended Trustee's Notice and Motion to Settle Disputed Matter ("Motion to Settle") pursuant to Federal Rule of Bankruptcy Procedure 9019. [Dkt. #5-3 at 3-97]. In the motion, Malloy sought approval of a compromise settlement with the United States, including a proposed Coordination Agreement ("CA"). The CA provided for assignments of the claims of "approximately 17,000 possible victims" of the pump-and-dump scheme against third parties (including Commerce Bank) to the Gordon bankruptcy estate. [Dkt. #5-2 at 61-62; Dkt. #5-3 at 1-2]. Commerce Bank objected to the motion, asserting, *inter alia*, that the proposed assignments violate Oklahoma law. [Dkt. #5-3 at 87-99]. Malloy, in response, argued that bankruptcy law determines whether or not the assigned claims become property of the estate and, alternatively, that the assignment of the claim is allowed under Oklahoma case law. [Dkt. #5-5 at 21-22].

Commerce Bank filed the Adversary Proceeding on July 5, 2012, seeking declaratory judgment that the investors' claims (which Malloy had threatened to assert against Commerce) were not the property of the debtor or the debtor's estate and could not be brought by the Trustee. [Dkt. #5-1 at 4-6]. Malloy moved to dismiss the Adversary Proceeding on August 13, 2012. [Dkt. #5-1 at 8-23]. Among other arguments, Malloy asserted the Adversary Proceeding would be mooted by the court's consideration of his Motion to Settle because "[i]f this Court determines that the assignments are valid consideration for the Trustee's settlement with the government, it impliedly will have found that the assignments themselves are valid." [*Id*. at 22].

On October 25, 2012, the Bankruptcy Court conducted an evidentiary hearing on the Motion to Settle. [Dkt. #5-6 at 73-156]. On January 4, 2013, while Malloy's Motion to Dismiss

the Adversary Proceeding was still pending, the Bankruptcy Court entered a Memorandum Opinion approving the CA. [*Id.* at 157-179]. In the Memorandum Order, the court found, *inter alia*, that the record was insufficient to determine whether Oklahoma law would prohibit assignment of the claims. [*Id.* at 174].

The same day, Malloy filed suit against Commerce Bank and one of its officers, Bruce C. Humphrey, in Tulsa County District Court. *See Malloy v. Humphrey, et al.*, CJ-2013-65, Tulsa County District Court (docket available online at www.oscn.net). The case was removed to federal court on January 30, 2013. [*Malloy v. Humphrey, et al.*, Case No. 13-CV-59-JHP-FHM, Dkt. ##1-2].

On March 15, 2013, the Bankruptcy Court entered a minute order granting Malloy's motion to dismiss the Adversary Proceeding. [Dkt. #5-1 at 3]. Commerce Bank appealed the dismissal of the Adversary Proceeding on April 29, 2013. [Dkt. #1].

On May 6, 2013, United States District Judge James H. Payne granted Malloy's Motion to Remand the lawsuit against Commerce Bank and Humphrey. [Case No. 13-CV-59, Dkt. #58]. Commerce appealed the remand decision. On March 11, 2014, the Tenth Circuit Court of Appeals dismissed the appeal. [*Id.*, Dkt. #70].

After remand to state court, Commerce Bank's Motion to Dismiss, including its standing argument, was denied on August 1, 2013. *See Malloy v. Humphrey, et al.*, CJ-2013-65. Commerce Bank filed an Application for Writ of Prohibition to the Oklahoma Supreme Court, which was denied on September 26, 2013. *Id.*

## II. Standard of Review

While the federal declaratory judgment statute, 28 U.S.C. § 2201, "vests the federal courts with power and competence to issue a declaration of rights, the question of whether this

power should be exercised in a particular case is vested in the sound discretion of the [deciding] courts." *St. Paul Fire & Marine Ins. Co. v. Runyon,* 53 F.3d 1167, 1168 (10th Cir. 1993) (citations omitted). Accordingly, this court's review of the bankruptcy court's decision to abstain from exercising declaratory judgment jurisdiction is limited to deciding whether the bankruptcy court abused its discretion. *Id.*

Under the abuse of discretion standard, the reviewing court asks only whether the bankruptcy court "made a clear error in judgment or exceeded the permissible bounds of choice in its decision to abstain from exercising its jurisdiction." *Id.* at 1168-69. This requires a showing that the court's decision was "arbitrary, capricious, whimsical, or manifestly unreasonable." *Mid-Continent Cas. Co. v. Village at Deer Creek Homeowners*, 685 F.3d 977, 981 (10th Cir. 2012).

In *Mhoon*, the Tenth Circuit adopted a list of five factors a trial judge should weigh when deciding whether or not to hear a declaratory action:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

31 F.3d at 983 (citing *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)).

### III. Discussion

### A. Whether the Report Erred in Refusing to Consider the Merits of the Claims Commerce Sought to Present

Commerce Bank contends "[t]he Report adopts the conclusion that the Adversary Proceeding was not the proper forum for addressing the issues presented, without acknowledging that this conclusion is inconsistent with the Bankruptcy Court's earlier statements and Malloy's

earlier argument that these issues concern important issues of federal law." [Dkt. #40 at 5]. The bank argues the dismissal of the adversary proceeding was an "about-face" by the Bankruptcy Court, which had earlier declined, in the context of ruling on the Trustee's motion to approve the CA, to rule on the validity of assignments of claims authorized by the agreement. It asserts that, as a result, the dismissal of the adversarial action was an abuse of discretion.

Having reviewed the record, this court disagrees with Commerce Bank's contention that the Bankruptcy Court did an "about-face." To be sure, as part of his motion to approve the CA, the Trustee sought a determination that the assignment of investors' claims was valid. The Bankruptcy Court, during a telephonic hearing on the Trustee's Amended Notice and Motion to Settle Disputed Matter, noted the Trustee had argued "that as a linchpin of the agreement any order approving the agreement must also approve the assignments and render them valid as a matter of law." [Dkt. #5-6 at 38]. The court challenged the Trustee's position, stating:

> With respect to the requirement that the assignments' validity be approved with the agreement: Why? Isn't the validity of the assignments a matter to be dealt with in any litigation of an assigned cause of action? Moreover, if this is necessary, can I issue an order unconditionally and finally approving these assignments and declaring their validity as part of a compromise under the motion practice employed under the Federal Rules of Bankruptcy Procedure?
>
> Isn't what the trustee [is] really seeking more in the nature of a declaratory judgment as to the validity of the assignments, which we all know requires an adversary proceeding? And, moreover, isn't this issue directly raised by Commerce Bank in the adversary proceeding currently pending as a declaratory judgment action, namely, adversary proceeding 12-1051[?]
>
> These are matters that need to be addressed and maybe at the evidentiary hearing, but I didn't see any reason to hide the ball prior to then, and I thought it would help the parties to know.

[Dkt. #5-6 at 38-39]. Subsequently, during the evidentiary hearing on the Amended Notice to Settle, the court heard oral arguments on the issue. [*Id.*, Dkt. #5-6 at 73-156].

6

In its January 4, 2013 Memorandum Opinion, the court discussed the topic at length and unequivocally stated its opinion that the appropriate forum for resolution of the validity of assignment issue was the court where Malloy's anticipated suit against Commerce Bank would be filed. [*Id.,* at 174-75].[1]  Consistent with this position, on March 13, 2013 the court granted the Trustee's motion to dismiss the Adversary Proceeding, again reiterating its position that the dispute should be resolved in the court where the Trustee brought its claims against the bank. [Dkt. #5-1 at 3].

The record does not support Commerce Bank's contention that the Bankruptcy Court did an "about-face" on the proper forum for determining assignment of claim validity.  Accordingly, this court rejects the bank's claim that the Bankruptcy Ccourt acted arbitrarily and capriciously.

### B. Whether the Report Erroneously Concludes the *Mhoon* Factors Were Implicitly Addressed

Commerce Bank argues the Magistrate Judge erred in concluding the Bankruptcy Court sufficiently assessed the factors set forth in *Mhoon*.  It contends that had the Bankruptcy Court explicitly addressed the five *Mhoon* factors, it would have been compelled to conclude abstention was improper.

---

[1] In support of its argument that the Bankrutpcy Court took inconsistent positions, Commerce Bank cites n.19 of the Memorandum Opinion.  In that footnote, the Bankruptcy Court stated:

> Commerce filed an adversary proceeding seeking a declaratory judgment that the purported assignments are invalid under Oklahoma law and do not serve to grant standing to Trustee with respect to the Assigned Claims.  Trustee is adamant that these issues can be dealt with in the pending matter. The Court agrees.

[Dkt. #5-6 at 164, n.19]. The meaning of this footnote is not entirely clear. However, in light of the Memorandum Opinion's subsequent lengthy discussion of the validity of assignment issue, it appears the Bankruptcy Court was agreeing with the Trustee that it was appropriate to *address* the issue in the Rule 9019 proceeding rather than in the adversary proceeding. The Bankruptcy Court *did*, in fact, address the issue, and determined that neither the Rule 9019 proceeding nor the adversary proceeding was the appropriate forum for resolution of the question; rather, the validity of assignments should be resolved by the court in which the Trustee's suit against Commerce Bank was filed.

The court does not believe *Mhoon* and its progeny dictate the wooden construction urged by Commerce Bank. In *Mhoon* itself, the court cautioned:

> While imposing on the trial court the obligation to weigh these various factors when deciding whether to hear a declaratory judgment action, this circuit has repeatedly over the years held that on appeal it will not engage in a *de novo* review of all the various fact-intensive and highly discretionary factors involved. *Instead, it will only ask whether the trial court's assessment of them was so unsatisfactory as to amount to an abuse of discretion.*

31 F.3d at 983 (citation omitted) (emphasis added). Subsequently, in *St. Paul*, the court stated that a reviewing court "should weigh various factors to determine whether or not to hear a declaratory judgment," and "[s]uch factors *may* include the [*Mhoon* factors]." 53 F.3d at 1169 (emphasis added). And in *Mid-Continent Cas. Co.*, the court quoted the cautionary language from *Moohn* and stated:

> When reviewing for abuse of discretion, the court must carefully scrutinize the district court's exercise of its discretion, but we may not substitute our own judgment for that of the trial court. The obligation not to substitute this court's judgment for that of the district court is especially important when reviewing a district court's analysis of the *Mhoon* factors
> . . .
> An abuse of discretion has been characterized as an arbitrary, capricious, whimsical, or manifestly unreasonable judgment. Put differently, under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.

685 F.3d at 981 (quotations and citations omitted).

While the Bankruptcy Court did not, in its order dismissing the adversarial action, recite the five *Mhoon* factors, a review of the record reveals ample discussion of the court's rationale for abstaining from exercising declaratory judgment jurisdiction.

First, in the telephonic hearing on the Trustee's Amended Notice and Motion to Settle Disputed Matter, the Bankruptcy Court questioned the propriety of the Trustee's request that it

determine the validity of assignments of claims, stating, in pertinent part, "Isn't the validity of the assignments a matter to be dealt with in any litigation of an assigned cause of action?" [Dkt. #5-6 at 38, 8/8/2012 telephonic hearing on Amended Notice and Motion to Settle Disputed Matter].

Second, in the Memorandum Opinion approving the CA, the Bankruptcy Court declined to rule on the validity of the assigned claims. In so ruling, it found "that Malloy's request is both premature, because no showing has been made that there is an actual conflict with Oklahoma law, and misplaced, as this is not the proper venue to address the question of standing in future litigation." [Dkt. #5-6, Memorandum Opinion, at 172]. The court discussed at length case law regarding the assignability of a cause of action under Oklahoma law. [*Id.* at163-64; 166-73]. Of particular note, the court cited *Momand v. Twentieth-Century Fox Film Corp.*, 37 F. Supp. 649, 657 (W.D. Okla. 1941), which "stands for the proposition that state law governing the assignability of causes of action applies, even where the action grows out of a Federal Statute." [*Id.* at 173]. The Bankruptcy Court stated:

> The significance of *Momand* is that it presents a framework whereby courts should 1) determine the nature, type, kind, and class of a cause of action, using Federal decisions where the cause of action is created under Federal law (and, by implication, using state decisions where the cause of action is created under state law); 2) determine what nature, type, and class of action the assignment of which is permitted or prohibited under the laws of Oklahoma; and 3) determine whether the cause of action at issue falls into the prohibited category. The record before the Court does not include sufficient information regarding the specific causes of action being assigned to Malloy by the Investors. The Court is unable to carry out the analysis required under the first prong of the *Momand* test. In the absence of information regarding the nature and source of the cause of action at issue, the Court cannot determine whether Oklahoma law would prohibit their assignment, and thus whether there are any preemption issues presented.
>
> Even if the record were complete regarding the claims that Malloy intends to bring against Commerce (or any other party, for that matter), this Court would leave the issue to the court where the matter will be tried. The time for the issue of Malloy's standing to be determined is when he files his complaint, and the

place to determine the issue is in the court where litigation is commenced. This decision is consistent with the authority cited by Malloy. In each of those cases, standing was determined within the context of litigation of the assigned claims, and not by another court. Once Malloy files his cause of action, the court where the action is filed should have a full understanding of the nature of the claims asserted. That court will be in the best position to determine whether the claims asserted are assignable.

*Id.* at 173-75.

The day the Coordination Agreement was approved, the Trustee filed suit against Commerce and Humphrey in Tulsa County District Court. Defendants removed the case to federal court.

Subsequently, in the Minute Order granting the Trustee's Motion to Dismiss the Adversary Proceeding, the Bankruptcy Court stated:

Commerce Bank seeks a declaratory judgment regarding the standing of Patrick J. Malloy III to bring certain causes of action against Commerce Bank. There is no need for this Court to issue a declaratory judgment, as each of those causes of action is presently pending before the United States District Court for the Northern District of Oklahoma in Case No. 13-CV-0059-JHP-FHM. As this Court stated in its January 4, 2013, Memorandum Opinion regarding approval of a compromise between Patrick J. Malloy III and the United States of America, [t]he time for the issue of Malloy[']s standing to be determined is when he files his complaint, and the place to determine the issue is in the court where litigation is commenced. . . . There is no reason for this Court to address issues of standing with respect to litigation commenced in another court. . . . The dispute between Commerce Bank and Malloy should be resolved in a single forum, and not on a piecemeal basis. The best course of action is for this adversary proceeding to be dismissed without prejudice to the ability of Commerce Bank to raise issues of standing in the court where the action brought by Malloy is pending. Accordingly, IT IS HEREBY ORDERED that this adversary proceeding be, and the same hereby is, dismissed without prejudice.

[Dkt. #5-1, Adversary Proceeding Docket Sheet, at 3].

Contrary to Commerce Bank's assertion, the record is clear that the Bankruptcy Court did not dismiss the adversary action simply because there was a parallel proceeding, and indeed, at

10

the time the adversary action was filed, the Trustee had not filed suit against Commerce Bank.[2] Based in large part on its reading of *Momand*, the Bankruptcy Court concluded the court that actually ended up with the lawsuit on the assigned claims should decide the validity of the assignments. At the time the court issued its Memorandum Opinion in the Rule 9019 proceeding, the anticipated lawsuit had not been filed (and could not be filed until the CA was approved). Therefore, the Bankruptcy Court could not perform the analysis required by *Momand*.[3] The Bankruptcy Court reasoned that once Malloy filed his cause of action, the court where the action was filed would have a full understanding of the nature of the claims asserted and would be in the best position to determine whether the claims asserted are assignable.[4] And by the time the Bankruptcy Court ruled on the motion to dismiss the adversary proceeding, the Trustee had sued Commerce Bank in Tulsa County District Court. Accordingly, and consistent with its Memorandum Opinion, the Bankruptcy Court found that the dispute between Commerce Bank and Malloy should be resolved in a single forum rather than on a piecemeal basis.

Based on its review of the record, the court finds that the Bankruptcy Court's decision was not arbitrary, capricious, whimsical, or manifestly unreasonable. Therefore, the Bankruptcy Court did not abuse its discretion in determining that abstention was appropriate.

## IV. Conclusion

For the reasons set forth above, Commerce Bank's Objections to the Report and Recommendation [Dkt. #40] are overruled, and the Report and Recommendation [Dkt. #37] is

---

[2] The existence of a parallel proceeding is not even listed as a factor in *Mhoon*.
[3] This implicates the first *Mhoon* factor—whether a declaratory action would settle the controversy.
[4] This implicates the fifth *Mhoon* factor—whether there is an alternative remedy which is better or more effective.

accepted. The decision of the Bankruptcy Court dismissing Commerce Bank's Adversary Complaint for Declaratory Judgment is affirmed.

ENTERED this 13th day of March, 2014.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT